Your argument now in the second case of the morning, docket number 22-1230, Henry Universal Electronics, Incorporated. Mr. Lucas, is it? Yes, your honor. Okay, and you reserve three minutes of rebuttal. That's correct, your honor. Please begin whenever you're ready. Thank you. May it please the court. Appellant, Universal Electronics, respects the request's reversal of the finding of the board rejecting claims 1-12 of the 451 application, unpatentable, as obvious. I'm going to raise two arguments, get into two major arguments that require this court's reversal. One is that the board's decision did not find that GARG, the primary reference, discloses the claimed switching device. And the second argument is going to be that the board's motivation to combine GARG and IGO is not legally sufficient. Can I try to understand what this claim convention is? Is it the remote control sends a command signal and then that command signal is read by two different devices? One is the switching device and one is the source device, i.e., the DVD player. So the remote control sends this IR command signal and it's really meant for the DVD player. But at the same time, the switching device recognizes this IR command signal as well and understands that it needs to connect the DVD player to the television set. So in that sense, we're talking about a command signal that's doing double duty in that two different devices are responding to the same signal? I wouldn't say double duty, but most of that is correct. Basically, you have this switching device. I would call it an automatic switching device. It's kind of like your hub in an entertainment system. And so you have, like you said, TVs, stereos, DVD players, all connected to that. And what it does is this automatic switching device has special logic that's able to recognize remote controls from all the different appliances that you have connected to that system. And then once it receives it, it automatically determines what appliance or appliances it needs to activate and then control from the specific remote. Because if you remember... But what is what you just said different from what I had said? Well, because I think it was the... I thought you said something... I was confused a little bit about the dual, that there's actually... The remote sends something twice. I don't think that... No, the remote sends one signal. One signal. But that one signal is actually being acted on by two different devices. The DVD player understands, aha, the remote control is telling me to do something. And so the DVD player is going to react to that. Secondly, there's this thing called the switching device, the hub, where the hub is seeing that same signal that's really designed to be sent and recognized by the DVD player and is seeing that that signal is telling the DVD player to do something. And so the hub now needs to connect the DVD player to the television set. That's correct. But in certain systems, I would say that when you... Let's use what we know. In the old prior art, you would have to press specific buttons, input buttons to say, oh, I want to use the DVD player. So let the entertainment system, or those called the hub, turn over to the DVD player and then we can use it. What we're doing here is it's all automatically done. So it... One signal. Correct. The hub catches the signal. The DVD player catches that same signal. It's meant for the DVD player, but at the same time, the hub also recognizes that because it's a signal meant for the DVD player, the hub needs to connect the DVD player to the television set. In your example, though, you might, if you don't have the automatic switching and you don't have this switching device that is able to interpret all the different signals of the different devices, it was like an old hub, it might not activate the DVD player. I understand that. Okay, okay. That was the only part I wanted to point out. Okay. So two different devices recognizing the same signal and acting on that same signal. I think that's correct, yes. If you go through the switching device, it recognizes it and then automatically says, I've got to make sure the DVD player is acted on, is controlled. Correct. So, does that answer your question? I was going to get into that, but so you took it to the west coast. No, it was good. I think when you get into the first argument that the primary reference doesn't disclose this automatic switching device, the claim switching device, and in particular the detection or determining limitation, and then the responding to limitation, I think that background really does illustrate that. The board, and let me just go right to that, what I'm talking about, the limitation. Claim five of our brief, determine that the receiver or the switching device has received an infrared IR signal transmitted by a remote control device, wherein the IR signal transmitted by the remote control device comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sync device. So, this is saying, look, this switching device has to be able to recognize that, it has to be able to automatically switch to that, it has to have all this logic, it has to know all the different remotes and their commands. That's extremely important because the board said that GARB disclosed that, that limitation in the board's decision, and I can take you to that, at appendix eight and nine, the board says, look, GARB teaches the switching device, the determining limitation, the response limitation, that's at nine, and then later on, at appendix 11, makes very clear, midway down, as discussed above, the examiner cites GARB for teaching the determining limitation and the detecting limitation. So, using that as a frame of reference, then you can kind of, you go back and you say, well, the examiner's already said in his final office action that the board was addressing that GARB doesn't disclose this switching device that does the determining and the responding. It doesn't. And that's here. If you look at appendix 229, about midway down, GARB fails to disclose, wherein the IR signal transmitted by the remote control device comprises a protocol and a command value that is directly recognizable by a first device among the plurality of source devices and the sync device. And what's important about that, it's interesting, if you look back at appendix 228, what the examiner did there is he looked at the claim in order, and then, you can see on 228, the method, we were talking about claim five, but this is the method of the switching device, detecting or determining, and then he goes through the whole claim, and then later on at the end, in isolation, he says, oh, GARB doesn't do this, part of the determining limitation, but let's just throw in IGO. But then when he goes to IGO, and I don't even want to get there, he doesn't say IGO's doing that. And there's no dispute before this court that GOURD, the primary reference, doesn't disclose the automatic switching device that determines and responds. The director is already... Well, I guess the question is, why wouldn't, we already know, it was known in the art for devices. It was also known in the art to send command signals directly to a particular device, like a DVD player. So why wouldn't it be obvious to combine those two signals into the same signal, so that you can have both functionalities occur at the same time, since we already got a remote control sending a signal? I would say it's not obvious, because on the record, the board has not said any of that, first of all. Okay? That's my first response. And they've actually gone and they've said GOURD teaches this, and we know GOURD doesn't teach it. The examiner has said it, and now the director has said it. So it's not a suggestion or a motivation to combine issue. We have to look at the board's decision, and the board has said, or this court has to look at the board's decision. The board says, GOURD, the primary reference, teaches this limitation, teaches this claim switching device that determines and responds. And it doesn't. The examiner has said it doesn't, and then the director agrees. I thought the director was supporting the board decision on GOURD. Well, I mean, I think it's supposed to, but the board's decision wasn't, you know, the most favorable for the director to respond to. But if you look at the director's brief at 9, I mean, GOURD discloses the switching device, but fails to specifically teach that the switching device acts in response to an IR signal sent by a remote control device, wherein the IR signal comprises, and we've discussed that. They go on. I mean, so we have the examiner, we have the board's decision, and now we have the director saying, look, GOURD, the primary reference, doesn't disclose this, and it requires reversal. There's no evidence in the record that GOURD, the primary reference used by the board, discloses this limitation. But I thought the rejection is based on a combination of references. It is. It's combining IGO with GOURD. Right, but the board relies on GOURD for that limitation. And we know what, and if you want to talk about IGO, I can talk about IGO. All IGO does, and all the board says it does, or the examiner, is it allows you to control a device with a remote. That's it. It doesn't have the automatic switching device either. It doesn't have the claim switching device. So, you don't have it in the combination. That's why, if you look at the board's brief, the board says, okay, yeah, so the board's decision, excuse me, the director says, the board's decision's not very good. Why don't we now modify GOURD? Something I think you brought up. The problem is that's not in the record. There's nothing there. GOURD doesn't disclose it. IGO doesn't disclose it. And now, left with this bad board decision, the director's saying, well, yeah, but maybe we should just modify GOURD to allow it to have the switching device that does the automatic switching. The problem is that's not in the record, and there's no support for that in the record. The examiner of the board has never discussed modifying GOURD in view of anything. The only discussion about modification is... And hypothetically, everything that's in the director's brief was in the board decision. I recognize that's not true. The director's brief uses different words. Sure. Let's assume for the moment that that's the basis of the board's decision. See the director's brief. What would your response be to the nature of that projection? I think it's a better shot at showing obviousness, but we still don't have any references that actually teach or even suggest this switching device, this automatic switching device. We don't have that. We have the GOURD device. All it does is just responds to a single remote for itself. That's it. That's all GOURD does. And then all you have in IGO is a remote that just allows you to control specific devices. That's it. There's no suggestion there for this automatic switching device in either reference. It's just not in the record. It's not in those two pieces of prior art. I would say it should also fail. That would be my response. That addresses the first argument. The second argument relates to the motivation combined. The board talks about... I think it was the board here. The board doesn't even talk about the feature. If you look at what was modified or what was combined. If you look at appendix 11, which is the board decision, it says, In particular, the examiner finds one skill in the art would have modified GOURD's system to incorporate IGO's feature in order to facilitate communications with the remote controller. Well, clearly, I don't know what the feature is. I think the board was a little concerned about the examiner's prior decision and just kind of said feature. Just throw that in there. It also shows that the office action was a little, I guess, tenuous. But that only relates to remote controls. That has nothing to do with switching devices. And all the board is saying and all the examiner said was you would have added a remote control that could control devices because you would want the remote control to control devices. That's also not a legally sufficient motivation to combine. And so we ask that the court also reverse this decision for that reason. I think you have two solid reasons for reversal here because the record is just... I guess your point is even if there was a motivation to combine these two references, the combination that the board and examiner has conceived of doesn't actually match up with the claimed invention. Correct. Let's hear from the other side. Thank you. May it please the court. I guess I'd like to start out by acknowledging that the board decision here is not the perfect example of PTO work product. Agreed. The red brief says a lot of interesting new things. And I think that because of the straightforward nature of this case, you can still get to a point to be comfortable with. Is this where you're going to tell me it wouldn't be productive to send it back to the PTO because these claims, even though the board may have botched it, are super obvious? No, I would say that we have a case where we have a claimed invention with just the concept of one signal, sending one IR signal to do two things. And that's disclosed in all of the paragraph and specification. It doesn't tell you how to do that. It just says- Where is it disclosed in the references? Well, the references, GARG includes a schematic drawing of all the internal electronics and talks about- I guess the answer is that no one reference actually discloses that limitation. No. You have to piece these two references together, free your mind a little bit, and then you can find that limitation. Is that fair to say? Yes, but I think that I would say that there's been a lot of focus on the fact that GARG doesn't disclose this automatic switching. But if GARG disclosed the automatic switching, we would have an anticipation case because GARG would do everything. Well, sure, but if GARG doesn't disclose automatic switching, then something needs to disclose the automatic shifting. IGO is very close, and I think that- Hey, when did it very close get to be good enough? Well, let me explain. IGO shows where- In IGO, does it disclose the automatic switching? At paragraph, I believe, let me just get it up so I have it right. Paragraph 42 of IGO, this is appendix page 451, discusses that the hub will switch when it recognizes a user interacting with the device. So it gives the example of a user putting a DVD into a DVD player. It says that once the user puts the DVD into the DVD player, the hub will recognize that and automatically switch to the DVD player. So there is automatic switching, it's just- It's not through the remote. No, instead of pushing a button on a remote, you're maybe pushing a button on the face of a source device. Did the board rely on this particular passage of IGO? No. Okay, I remember reading it somewhere. Yeah. That was in your red book. Yes. Okay. Shouldn't we at least have, at the minimum, have an explanation from somebody before you that this equivalent switching basically teaches the same thing as the remote switching? Yes, and I- I mean, if it actually disclosed the remote switching, then maybe you've got substantial evidence, but we're a step away from that. I can see how you might get there, a skilled artist might look at this and say, there's no functional difference between using a remote to switch or actually doing a physical act like putting in a DVD or something else. I think your opponent would disagree, but at least we would have that explanation. Correct, and if this explanation is not sufficient, I understand if the case can be remanded for a clearer explanation. Is it your view that the appellant's counsel before the board was mischaracterizing the examiner's findings and wrote an unclear brief that was conclusory? Because that's what the board said about the board brief by the applicant. Yeah, I think that the- The statements by the board? I wouldn't go as far as what the board said about the quality of their brief. I think that it was a bit confusing because they were just kind of making these statements saying, GARB doesn't disclose this, IGO doesn't disclose this, without some follow-up explanation. It's true that neither of those references disclose this particular limitation of a single IR command signal being responded to by two different devices. And if they had explained why, I think that would have helped the board. I mean, their appeal brief to the board- Maybe if the examiner explained why it was shown, it would have helped the board, too. That's true. I think the examiner- So if we remand this, the examiner's not just going to shoot a patent out the door, right? I mean, that decision is not necessarily in my hands, but I would strongly recommend that this application go back for further examination. Because I think that there are, beyond these two references, I think you can make an obvious rejection based on what's admitted in the specification. I think you can make a 112 rejection based on the fact that this is all disclosed in a single paragraph that doesn't tell you how to do any of this. So, I mean, if this came back, it would be my hope that we would provide a better rejection on the next go-around. But I can't make this rejection say any more than it does. I think that the examiner's answer, at least, acknowledges that you would have to modify Garg's switching device. This is on appendix page 315. I think both the examiner and the board, while being incredibly brief, recognize that one reference, Garg, shows a remote control sending a signal that controls the switching device. The other reference, Igo, has a remote control that directly controls the source device. And putting these two together can get you one signal that does both. There's not really much more said beyond that. But I think that, again, the straightforward nature of this, the idea that you'd want to simplify the process. I mean, you know, you've encountered the situation where you go into your living room and you have all these remotes sitting there. And you have to try to figure out, you know, what turns on what and how do I control this. And the idea of going from, well, one remote that you press a button to change the input and then press another button to control the source device to just pressing one button. I mean, we're going from pressing two buttons to pressing one button. And it just doesn't seem like that difference is enough. You know, that step gets you a patent. But, you know, that's what I think the examiner and the board are getting at. But it's not explained as clearly as that, unfortunately. No further questions? Thank you. And the court appreciates the candor. It would not have been good if it was done the other way. I just have a couple of comments. I mean, I think the important point is that the prior art doesn't disclose the claim switching device with this special automatic switching logic. There was a reference to iGo at paragraph 42 that's not automatic through the remote. That wasn't relied on by the board. It is automatic, is it not? In the sense that you push the button on the DVD player, the iGo's hub automatically connects the DVD player to the sync device. I guess in the sense that, yes, without a remote, just with the pressing of a button. Right, but if the examiner or the board had said, well, iGo only teaches it through, you know, inserting a DVD, but we see no different and a skilled artisan would know that doing it through a remote is the same thing, then that conclusion would be up here for substantial evidence review. I still think you're just pressing the button is not the same as being able to recognize all the different remote control signals in an automatic switching hub or automatic switching device. But I think you're saying, I think your question is if they would have developed the motivation to combine better. Yes, I think it would be a better argument, I guess, is my response. I mean, the argument is iGo teaches automatic switching. It just does it through the devices themselves rather than the devices' remotes. But there's no difference from there. But, you know, and you can argue about that. I mean, it's kind of pointless for us to argue about something the examiner didn't find. But I think you'd have a much harder case if the examiner had made that finding. I would agree with that. I mean, the automatic versus manual. I think kind of when you push a button, that's a manual push. But I agree with you, I guess, that once you push the button, something happens that's automatic. You're pushing a button on a remote, too, aren't you? True, true. But I think the point, I don't, I didn't want to. Let me just. Sure. No, never mind. You're over your time. I just want to say, I probably would request a reversal. I don't think the board should get another shot at this. I think this is definitely a case where this court should just reverse based on the record evidence. Thank you, Your Honor. Thank you very much. Thank you, Your Honor.